[Cite as *State v. Honaker*, 2017-Ohio-1008.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2016-06-046 |
| | : | O P I N I O N |
| - vs - | | 3/20/2017 |
| | : | |
| KENNETH TODD HONAKER, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2013 CR 00555

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Clyde Bennett II, 119 East Court Street, Cincinnati, Ohio 45202, for defendant-appellant

**PIPER, J.**

{¶ 1} Defendant-appellant, Kenneth Honaker, appeals his convictions in the Clermont County Court of Common Pleas for robbery.

{¶ 2} The Clermont County Grand Jury returned a multi-count indictment against Honaker for his involvement in several robberies of Check 'n Go stores throughout Ohio. Honaker was indicted on a single count of aggravated robbery with an accompanying gun specification, along with three counts of robbery. Each of the four counts were alleged to

have occurred in Clermont County, Ohio. Honaker pled not guilty, and moved to suppress a statement he gave police regarding his involvement in the robberies.

{¶ 3} The trial court held a three-day hearing on Honaker's motion to suppress. During that hearing, Sergeant Sandy Sears testified that she was investigating robberies at various Check n' Go stores in the Fairfield, Ohio area and began to suspect that Honaker was the perpetrator of those robberies. Sergeant Sears became aware that Honaker had been apprehended in Kentucky for bank robbery and was incarcerated at the Kenton County Jail in Covington, Kentucky. She traveled to the jail, where she interviewed Honaker.

{¶ 4} Upon their meeting, Sergeant Sears introduced herself and told Honaker that he was a suspect in the Check 'n Go robberies. Sergeant Sears advised Honaker of his Miranda rights, and he signed a form acknowledging that he understood his rights. The two then discussed Honaker's addiction to heroin, and his familiarity with Check 'n Go stores in Ohio.

{¶ 5} Approximately 35-40 minutes into the interview, and once Sergeant Sears explained to Honaker that police could use his cell phone information to show where and when certain calls were made, Honaker's demeanor changed. Honaker began complaining of being "dope sick" and stated that he was in pain. Honaker asked Sergeant Sears to come back the next day with a written deal from the prosecutor. Sergeant Sears told Honaker that if she left that day, she would not come back and that she would proceed with the evidence and information she already had in the case. Honaker then admitted that he robbed the Check n' Go stores, except for one robbery alleged to have occurred in Western Hills.

{¶ 6} Honaker then provided a written statement admitting his involvement in the robberies, and stated that he stole to support his heroin addiction. Sergeant Sears testified that at no time during the interview did Honaker ask for counsel or state that he did not want to talk until his counsel was available to him.

{¶ 7} Honaker testified that when Sergeant Sears came to the jail, he was going through heroin withdraw and that he was very sick. Honaker testified that he informed Sergeant Sears that he had appointed counsel, and that he did not want to talk to her until his counsel was available. He also claimed that the only reason he admitted to the robberies was because he thought it was what Sergeant Sears wanted to hear.

{¶ 8} After the hearing, the trial court denied Honaker's motion to suppress, finding that Honaker's testimony that he asserted his right to counsel lacked credibility. Honaker then agreed to a plea deal with the state whereby the state would agree to dismiss some of the charges in exchange for a guilty plea. During the plea hearing, Honaker's counsel indicated that Honaker understood that one of the consequences of pleading guilty was that he would not be able to appeal the trial court's decision on his motion to suppress.

{¶ 9} The trial court then engaged in a complete colloquy with Honaker and accepted his guilty pleas as knowingly, intelligently, and voluntarily made. The trial court sentenced Honaker on each count, and ordered the sentences to be served consecutive to one another and consecutive to a federal prison sentence Honaker was ordered to serve for the separate robbery in Kentucky. Honaker now appeals his convictions and sentence, raising the following assignments of error.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE APPELLANT'S RIGHTS TO THE EFFECTIVE [SIC] OF COUNSEL GUARANTEED UNDER § 10, ARTICLE 1 OF THE OHIO CONSTITUTION AND SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WERE VIOLATED WHEN HIS ATTORNEYS FORECLOSED HIS RIGHT TO APPEAL THE TRIAL COURT'S DENIAL OF HIS MOTION TO SUPPRESS BY ADVISING APPELLANT TO PLEAD GUILTY RATHER THAN NO CONTEST.

{¶ 12} Honaker argues in his first assignment of error that he was denied effective

assistance of counsel because he was not advised to plead no contest rather than guilty.

{¶ 13}  To prevail on an ineffective assistance of counsel claim, appellant must show his trial counsel's performance was deficient, and that he was prejudiced as a result.  *State v. Clarke*, 12th Dist. Butler No. CA2015-11-189, 2016-Ohio-7187, ¶ 49; *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984).  Trial counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness.  *Strickland* at 688.  To show prejudice, appellant must establish that, but for his trial counsel's errors, there is a reasonable probability that the result of his trial would have been different.  *Id.* at 694.

{¶ 14}  The failure to satisfy either prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim.  *Clarke* at ¶ 49.  Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 7.

{¶ 15}  By pleading guilty, a defendant waives the right to claim prejudice by the ineffective assistance of counsel except to the extent that the defects complained of caused the plea to be less than knowingly, intelligently, and voluntarily made.  *State v. McMahon*, 12th Dist. Fayette No. CA2009-06-008, 2010-Ohio-2055, ¶ 33.

{¶ 16}  In this case, we find that Honaker's plea was knowingly, intelligently, and voluntarily made.  The record indicates that the trial court provided Honaker a full Crim.R. 11 colloquy that complied with all constitutional and nonconstitutional notification requirements.  Moreover, the record clearly indicates that Honaker was advised before he made his plea that by pleading guilty, he was giving up the right to appeal the trial court's ruling on his motion to suppress.

{¶ 17}  During the plea hearing, one of Honaker's trial counsel stated, "just so the

Court and the record is clear, Your Honor. He's going to go forward with his plea, and then he understands that there – the motion to suppress, any other pretrial motions will be waived by the guilty plea." Honaker later verified with the trial court that he understood the consequences of pleading guilty, that he had discussed his case with his attorneys, and that he was satisfied with their representation. As such, Honaker's plea was properly accepted by the trial court as knowingly, voluntarily, and intelligently made.

{¶ 18} Honaker also asserts that his right to effective assistance of counsel was violated because an appeal of the trial court's decision on Honaker's motion to suppress would have been successful had he pled no contest and been permitted to challenge the court's ruling on appeal. We disagree. There is no indication in the record that the trial court's decision to deny Honaker's motion would have been reversed.

{¶ 19} The crux of Honaker's motion to suppress was that his right to counsel was violated once he asked for counsel but Sergeant Sears continued to question him. The issue was one of credibility, with Sergeant Sears testifying that Honaker did not ask for counsel, and Honaker testifying he did. As such, and because the trial court is in the best position to judge credibility, there is no indication that the results of Honaker's motion to suppress would have been different. *See State v. Sekse*, 12th Dist. Preble No. CA2015-07-015, 2016-Ohio-2779 (an appellate court gives deference to the trial court's findings of fact and determinations of witness credibility when reviewing a trial court's decision on a motion to suppress).

{¶ 20} After reviewing the record, we find that Honaker was not denied effective assistance of counsel where his plea was made knowingly, intelligently, and voluntarily. As such, Honaker's first assignment of error is overruled.

{¶ 21} Assignment of Error No. 2:

{¶ 22} THE JUDGMENT OF CONVICTION IN THIS CASE IS VOID BECAUSE THE

TRIAL COURT LACKED SUBJECT MATTER JURISDICTION.

{¶ 23} Honaker argues in his second assignment of error that the trial court lacked subject matter jurisdiction over his case.

{¶ 24} Jurisdiction means the court's statutory or constitutional power to adjudicate the case. *Morrison v. Steiner*, 32 Ohio St.2d 86, 87 (1972). The term encompasses jurisdiction over the subject matter and over the person. *State v. Parker*, 95 Ohio St.3d 524, 2002-Ohio-2833, ¶ 22. The court of common pleas has original subject matter jurisdiction over crimes and offenses committed by an adult. R.C. 2931.03 and Section 4(B), Article IV, Ohio Constitution.

{¶ 25} The record indicates that the indictment charging Honaker with the crimes to which he pled guilty specifically alleges that the robberies that constituted counts one and two occurred in Clermont County, Ohio. During the plea colloquy, the trial court stated that Honaker was facing charges that he committed two robberies in Clermont County, Ohio, and the state's statement of facts at the plea hearing indicated that the two robberies occurred in Clermont County, Ohio. When the trial court inquired as to whether Honaker had any disagreement with the statement of facts as set forth by the state, including that his two crimes occurred in Clermont County, Ohio, Honaker replied, "no, Sir."

{¶ 26} Based on the record, Honaker's crimes occurred in Clermont County, Ohio so that the trial court had proper jurisdiction over the case. Honaker's second assignment of error, therefore, is overruled.

{¶ 27} Judgment affirmed.

S. POWELL, P.J., and RINGLAND, J., concur.